FOX ROTHSCHILD LLP
Phillip F. Shinn (SBN: 112051)
235 Pine Street, Ste. 1500
San Francisco, CA 94104-2734
(415) 364-5540
Attorneys for Defendant
GEOSENTRIC OYJ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Decarta, Inc.<br><br>    Plaintiff,<br><br>vs.<br><br>Geosentric OYJ<br><br>    Defendant.<br><br>Geosentric, OYJ<br><br>    Counter-Claimant<br><br>Vs.<br><br>Decarta, Inc.<br><br>    Respondent | Case No. CO8 02620<br><br>**GEOSENTRIC'S COUNTER-CLAIM AGAINST DECARTA** |

Defendant and Counter-Claimant, GEOSENTRIC OYJ (hereafter, "Geosentric") hereby Counter-Claims against Plaintiff and Respondent, DECARTA, INC.(hereafter, "Decarta,") as follows:

## THE PARTIES

1.    Counter-claimant, Geosentric, OYJ, is a corporation organized under the laws of Finland and headquartered in Salo, Finland, and is a successor in interest to Benefon, Ltd.

2.    Respondent, DeCarta is a California corporation with its principal place of business at 4 No. Second Street, Ste. 950, San Jose, CA 95113.

### JURISDICTION AND VENUE

3.    Geosentric is a successor in interest to Benecap, Ltd., a Jersey Corporation, with corporate offices at Maxwell Chambers, 35-39 La Colomberie, St. Helier, Jersey JE2 4Q8.

4.    DeCarta was formerly known as Telcontar, Inc., a California corporation with corporate offices at 4 No. Second Street, Ste. 950, San Jose, CA 95113

5.    On or about June 16, 2005, Telcontar and Benecap Ltd. entered into a written "Telcontar Software License Agreement," a true and correct copy of which is attached hereto as **Exhibit A,** hereafter the "Original Agreement."

6.    Paragraph 12.2 of the Original Agreement between Telcontar and Benecap provided that any legal action or proceeding arising under the agreement would be brought exclusively in the federal or state courts of California, and that the agreement would be governed by and construed under the laws of the State of California.

### ALLEGATIONS RE ORIGINAL AGREEMENT

7.    Under the Original Agreement between Telcontar and Geosentric's predecessor in interest, Benecap, (Exhibit A), Telcontar agreed to supply driving route calculation software for inclusion in mobile phones.

8.    Pursuant to paragraph 7.1 of the Original Agreement, Telcontar warranted the software product for a period of one year after delivery to "function in all material respects in accordance with Telcontar's published user documentation."

9.    DeCarta materially breached the Original Agreement by failing to provide route calculation software that functioned in accordance with Telcontar's published user documentation, in that the route calculation software functioned too slowly to be of use to drivers while navigating on roads in certain regions of Western Europe.

### ALLEGATIONS RE ORAL AGREEMENT

10. In or around September, 2006, DeCarta, (formerly Telcontar), and Geosentric's predecessor in interest, Benefon, entered into an oral agreement that, by the end of 2006, DeCarta would supply to Benefon for inclusion in mobile phones, routing engines that would fit road maps of the whole of Western Europe on a 1GB SD card, in exchange for which Benefon would agree to an increase in the Minimum Annual Licensing Fee (MALF) from 65,000 Euros in 2005, under the Original Agreement, to 510,000 Euros in 2006, an increase of some 684%.

11. DeCarta and Benefon agreed to draft an amendment to the "Original Agreement" that would contain the terms set forth in paragraph 10, above.

12. DeCarta materially breached the oral agreement by failing to supply to Benefon with the routing engine compressed sufficiently to fit on a 1GB card.

## FIRST CAUSE OF ACTION

**(**Rescission of the Original Agreement)

13. Geosentric incorporates by reference paragraphs 1-12 as though fully set forth herein.

14. Telcontar materially misrepresented the capabilities of its driving route calculation software in that it was not able to provide timely driving directions to drivers navigating on roads in certain regions of Western Europe.

15. Geosentric's predecessor in interest, Benecap reasonably relied upon Telcontar's material misrepresentation in signing the Original Agreement.

16. As successor in interest to Benecap, Geosentric rescinds the Original Agreement on the ground of material misrepresentation.

## SECOND CAUSE OF ACTION

(Breach of the Original Agreement)

17. Geosentric incorporates by reference paragraphs 1-12 as though fully set forth herein.

18. Geosentric's predecessor in interest, Benecap performed all conditions, covenants, and promises required on its part to be performed under the Original Agreement.

Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA 19103-3291

19. DeCarta's material breach of the Original Agreement proximately caused substantial damage to Geosentric and its predecessors in interest in an amount to be proven at trial in that they were unable to distribute and sell mobile phone containing the driving route calculation software as warranted by Telcontar.

### THIRD CAUSE OF ACTION
(Breach of Express Warranty)

20. Geosentric incorporated paragraphs 1-12 and 17-19 by reference as though fully set forth herein.

21. DeCarta breached the express warranty contained in paragraph 7.1 of the Original Agreement by failing to provide licensed driving route calculation software that performed to the standards agreed upon.

22. DeCarta failed to correct the nonconformity of the license driving route calculation software or to refund the license fees paid by the licensees under the Original Agreement.

23. As a proximate result of this breach of express warranty by DeCarta, Geosentric and its predecessors in interest were substantially damaged in an amount equivalent to the licensing fees paid for the defective software.

### FOURTH CAUSE OF ACTION
(Breach of Implied Warranty of Merchantability)

24. Geosentric incorporates by reference paragraphs 1-12, 17-19 and 20-23 as though fully set forth herein.

25. Geosentric's predecessor in interest, Benecap, contracted for the purchase of goods from Telecontar, which was a merchant with respect to the kind of goods sold to Benecap, and there was in the sale of goods an implied warranty that those goods were merchantable.

26. However, Telecontar and DeCarta breached the implied warranty of merchantability in that the software was not fit for its intended purpose as driving route calculation software for use throughout Western Europe.

-4- SF1 1535v2 05/28/08

27. Geosentric's predecessor in interest, Benefon, discovered the breach of the implied warranty of merchantability in the second half of 2006, when the routing software took an inordinate length of time to provide driving directions during testing, and Benefon notified DeCarta of this breach in writing.

28. As a proximate result of this breach of warranty by DeCarta, Geosentric and its predecessors in interest have been substantially damaged in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

(Breach of Oral Agreement)

29. Geosentric incorporates by reference paragraph 1-12 as though fully set forth herein.

30. Geosentric and its predecessors in interest fully performed all conditions, covenants and promises required of them under the Oral Agreement alleged in paragraph 10, above.

31. DeCarta's material breach of the Oral Agreement proximately causes substantial damage to Geosentric and its predecessors in interest in an amount exceeding $1 million.

**WHEREFORE,** Geosentric prays for judgment as follows:

1. For compensatory damages in excess of $1,000,000;
2. For interest thereon according to the legal rate;
3. For judgment in favor of Geosentric and against DeCarta;
4. For declaratory relief;
5. For rescission of the Original Agreement and restitution;
6. For costs of suit and reasonable attorney's fees; and
7. For such other relief as the Court deems just and proper.

Date: _____        FOX ROTHSCHILD, LLP

_____
PHILLIP F. SHINN
Attorneys of Record for Counter-Claimant
GEOSENTRIC OYJ

-5-  SF1 1535v2 05/28/08

# EXHIBIT A

# EXHIBIT A

## TELCONTAR SOFTWARE LICENSE AGREEMENT

This Software License Agreement (this "*Agreement*") is entered into and made effective as of ___ June, 2005, by and between Telcontar, a California corporation with corporate offices at Four North Second Street, Suite 950, San Jose, CA 95113 ("*Telcontar*"), and Benecap Limited, a Jersey, Channel Islands company with offices at Maxwell Chambers, 35-39 La Colomberie, St. Helier, Jersey JE2 4QB ("*Licensee*").

1. **DEFINITIONS.**

   1.1 "*Derivatives*" means works that are based upon one or more pre-existing works included in the Telcontar Standard Software, such as revisions, enhancements, Modifications, translations, condensations, compilations, or any other form in which such pre-existing works may be recast, transformed or adapted.

   1.2 "*Documentation*" means the user manuals and explanatory written material that is intended to assist Licensee in the use of the Telcontar Standard Software. The material may be presented in hardcopy or softcopy format.

   1.3 "*End Users*" means Licensee customers who access Licensee Products and Services

   1.4 "*Intellectual Property Rights*" means patent rights (including patent applications and disclosures), copyrights, trade marks, trade secrets, know-how and any other intellectual property rights recognized in any country or jurisdiction in the world.

   1.5 "*Licensee Products and Services*" means the particular products and services which utilize or access Telcontar Products and are more fully described in Exhibit B.

   1.6 "*Modifications*" means corrections, maintenance releases or modifications to the Telcontar Standard Software.

   1.7 "*Object Code*" means the format of the Telcontar Standard Software that results from the assembly, compilation, translation or processing of the Source Code into machine language or code executable by a computer using an operating system and platform with which it is compatible.

   1.8 "*Products*" means the particular pieces of the Telcontar Standard Software that are being licensed hereunder and are fully outlined in Exhibit A. All Products will be provided in Object Code format.

   1.9 "*Source Code*" means the format in which the Telcontar Standard Software is developed and from which a person skilled in computer programming may directly produce the internal logic and the structure of the Telcontar Standard Software.

   1.10 "*Telcontar Standard Software*" means the proprietary spatial content management software tools, platform and applications, provided in Object Code format, and all related Documentation.

2. **LICENSE.**

   2.1 *Grants of License.* Subject to the terms and conditions of this Agreement, including, but not limited to, the payment of all applicable fees, Telcontar grants to Licensee the following licenses:

   a. a non-exclusive, non-transferable (except as to Benefon Oyj) license to (i) market, distribute and sublicense the Rich Map Engine to End Users only in combination with Licensee's Products and Services; and (ii) copy the Rich Map Engine only as necessary to market and distribute Licensee's own Products and Services in accordance with subsection (i) above. In no event may Licensee distribute the Rich Map Engine except in combination with Licensee's Products and Services.

   b. a non-exclusive, non-transferable (except as to Benefon Oyj) license to use the Sample Client Applications only for Licensee's internal use, and solely as a reference guide for Licensee's development of its own applications.

   c. A non-exclusive, non-transferable (except as to Benefon Oyj) license to use the Compiler and Filter(s) only for (i) Licensee's internal use; and (ii) to add value to Licensee's own Products and Services.

2.2 *License Restrictions* Except as otherwise expressly provided in this Agreement, Licensee may not: (a) transfer, sublicense or otherwise distribute the Telcontar Products to any third party; (b) modify the Products nor permit any third party to do so; or (c) copy the Products, except for a single backup copy. Licensee agrees not to disassemble, decompile or reverse engineer the Products nor permit any third party to do so, except to the extent such restrictions are prohibited by law.

2.3 *Limited Rights.* Licensee's rights in the Products will be limited to those expressly granted in this Section 2. Telcontar reserves all rights and licenses in and to the Products not expressly granted to Licensee under this Agreement.

2.4 *Government Rights.* Any use, duplication, or disclosure of the Products by the U.S. government is subject to restrictions as set forth in this license agreement and as provided in DFARS 227.7202-1(a) and 227.7202-3(a) (1995), DFARS 252.227-7013(c)(1)(ii) (OCT 1988), FAR 12.212(a) (1995), FAR 52.227-19, or FAR 52.227-14 (ALT III), as applicable.

2.5 *Verification and Audit.* At Telcontar's reasonable written request, Licensee shall furnish Telcontar with a certification signed by an officer of Licensee verifying that the Products are being used pursuant to the terms of this Agreement and corresponding payment schedule. In addition, with prior written notice, Telcontar may utilize an independent auditor of Telcontar's choosing to audit Licensee's use of the Products to ensure that Licensee is in compliance with the terms of this Agreement and corresponding payment schedule. Any such audit shall be conducted during regular business hours at Licensee's facilities and shall not unreasonably interfere with Licensee's business activities. Licensee shall provide the auditor access to the relevant Licensee records and facilities. Such audit shall not disclose to Telcontar or to any third party the identity of individual customers or territories in which units have been sold. If an audit reveals that Licensee has underpaid fees to Telcontar, Licensee shall be invoiced for such underpaid fees based on Telcontar's price list in effect at the time the audit is completed. Licensee shall promptly deliver to Telcontar any unpaid fee for any errors or omissions disclosed by such audit. If the underpaid fees exceed five percent (5%) of the license fees owed over the period covered by the audit, then Licensee shall also pay Telcontar's reasonable costs of conducting the audit.

3. OWNERSHIP.

Telcontar owns all worldwide right, title and interest in and to the Products, including Derivatives, and all worldwide intellectual Property Rights therein. Licensee will not delete or in any manner alter the copyright, trademark, and other proprietary rights notices appearing on the Products as delivered to Licensee. Licensee will reproduce such notices on all copies it makes of the Products.

4. BASIC SUPPORT.

4.1 *Basic Support.* Telcontar will provide Licensee with Basic Support for the Products in accordance with Telcontar's basic support policy, attached as Exhibit D. Notwithstanding the foregoing, Basic Support will only be provided if Licensee is current on all license fees due under this Agreement.

4.2 *Exclusions to Basic Support.* Telcontar shall have no obligation of any kind to provide support for problems in the operation or performance of the Products caused by any of the following (each, a *"Licensee-Generated Error"*): (a) non-Telcontar software or hardware products or use of the Products in conjunction therewith; (b) modifications to the Products not made by Telcontar or a party expressly authorized by Telcontar; or (c) Licensee's use of the Products other than as authorized in this Agreement or as provided in the Documentation accompanying the Products. If Telcontar determines that it is necessary to perform support for a problem caused by a Licensee-Generated Error, Telcontar will notify Licensee thereof as soon as Telcontar is aware of such Licensee-Generated Error and, if so requested and approved in writing by Licensee, Telcontar will have the right to invoice Licensee at, and Licensee agrees to pay, Telcontar's then-current published time and materials rates for all such support performed by Telcontar.

5. ORDERING AND DELIVERY.

5.1 *Ordering.* Licensee is expected to submit a purchase order for the Products licensed under this Agreement, however in any instance where the terms and condition of the purchase order are inconsistent with the terms and conditions of this Agreement, this Agreement will prevail.

5.2 *Delivery.* All Products will be shipped FOB Telcontar's site. Shipping and handling charges will be invoiced with shipment. Licensee may request electronic delivery in addition to or instead of media delivery.

6. PAYMENT.

6.1 *Fees.* Licensee will pay Telcontar the license fees as outlined in Exhibit B. Unless otherwise noted, payment terms are net thirty (30) days.

6.2 *Quarterly Reporting.* Licensee will provide Telcontar with a quarterly reporting schedule as shown in Exhibit C.

6.3 *Interest.* All past due amounts will incur interest at a rate of 1.5% per month or the maximum rate permitted by law, whichever is less.

6.4 *Payment Terms and Taxes.* Licensee will pay all amounts due under this Agreement in U.S. currency. All fees payable under this Agreement are net amounts and are payable in full, without any deductions for taxes of any kind. Licensee will be responsible for, and will promptly pay, all taxes and duties of any kind (including but not limited to sales, use and withholding taxes) associated with this Agreement or Licensee's receipt or use of the Products and support and maintenance, except for taxes based on Telcontar's net income, gross receipts or net worth. In the event that Telcontar is required to collect any tax for which Licensee is responsible, Licensee shall pay such tax directly to Telcontar. If Licensee pays any withholding taxes that are required to be paid under applicable law, Licensee will furnish Telcontar with written documentation of all such payments, including receipts.

7. **WARRANTY.**

7.1 *Limited Product Warranty.* Telcontar warrants to Licensee that for a period of one year after the date of delivery to Licensee the Products will function in all material respects in accordance with Telcontar's published user documentation.

7.2 *Sole Remedy.* As Licensee's sole and exclusive remedy and Telcontar's entire liability for any breach of the warranty set forth in Section 7.1, Telcontar will, at its option and expense: (i) promptly correct any Products that fail to meet this limited warranty; (ii) provide Licensee with a reasonable procedure to circumvent the nonconformity; or (iii) if Telcontar fails to correct the nonconformity or provide a reasonable workaround, refund the license fees paid by Licensee pursuant to Section 6.1 for the non-conforming Product upon Licensee return of such Product to Telcontar.

7.3 *Disclaimer.* Telcontar does not warrant that the Products will meet Licensee's requirements, that the Products will operate in the combinations that Licensee may select for use, that the operation of the Products will be error free or uninterrupted or that all Product errors will be corrected. TELCONTAR DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, QUIET ENJOYMENT AND WARRANTIES ARISING OUT OF COURSE OF DEALING, USAGE, OR TRADE.

8. **INDEMNIFICATION.**

8.1 *Infringement Indemnity.* Telcontar will defend any action brought against Licensee to the extent that it is based upon a claim that the Products, as provided by Telcontar to Licensee under this Agreement and used within the scope of this Agreement, infringe any U.S. or European patent, copyright or other intellectual property rights, or misappropriate any trade secret, and will pay any costs, damages and reasonable attorneys' fees attributable to such claim that are awarded against Licensee, provided that Licensee: (a) promptly notifies Telcontar in writing of the claim; (b) grants Telcontar sole control of the defense and settlement of the claim; and (c) provides Telcontar with all assistance, information and authority reasonably required for the defense and settlement of the claim, at Telcontar's expense.

8.2 *Injunctions.* If Licensee's use of any of the Products hereunder is, or in Telcontar's opinion is likely to be, enjoined due to the type of claim specified in Section 8.1 above, Telcontar may, at its sole option and expense: (a) procure for Licensee the right to continue using such Products under the terms of this Agreement; (b) replace or modify such Products so that they are non-infringing and substantially equivalent in function to the enjoined Products; or (c) if options (a) and (b) above cannot be accomplished despite Telcontar's reasonable efforts, then Telcontar may terminate Licensee's rights and Telcontar's obligations hereunder with respect to such Products and refund to Licensee the unamortized portion of the license fees paid by Licensee pursuant to Section 6.1 based upon straight-line depreciation for the applicable period. For example, if the Licensee paid $50,000 for a one year period and this agreement is terminated in the fifth month due to an incurable injunction, the Licensee would receive a refund equal to seven / twelfths of the $50,000.

8.3 *Exclusions.* Notwithstanding the terms of Section 8.1, Telcontar will have no liability for any claim of any kind to the extent it results from: (a) modification of the Products made by a party other than by Telcontar; (b) the combination, operation or use of any Product with equipment, devices or software not supplied by Telcontar, if a claim would have been avoided but for such combination; or (c) Licensee's failure to use updated or modified Products provided by Telcontar.

8.4 *Sole Remedy.* THE PROVISIONS OF THIS SECTION 8 SET FORTH TELCONTAR'S SOLE AND EXCLUSIVE OBLIGATIONS, AND LICENSEE'S SOLE AND EXCLUSIVE REMEDIES, WITH RESPECT TO INFRINGEMENT OR MISAPPROPRIATION OF INTELLECTUAL PROPERTY RIGHTS OF ANY KIND.

## 9. CONFIDENTIALITY

**9.1 Definition.** "Confidential Information" means: (a) the Products and other product-related documentation; (b) any business or technical information of Telcontar or Licensee, including but not limited to any information relating to Telcontar's or Licensee's product plans, designs, costs, product prices and names, finances, marketing plans, business opportunities, personnel, research, development or know-how that is designated by the disclosing party as "confidential" or "proprietary" and, if orally disclosed, reduced to writing by the disclosing party within thirty (30) days of such disclosure; and (c) the specific terms and pricing set forth in this Agreement.

**9.2 Exclusions.** Confidential Information does not include information that: (a) is or becomes generally known to the public through no fault or breach of this Agreement by the receiving party; (b) is rightfully known by the receiving party at the time of disclosure without an obligation of confidentiality; (c) is independently developed by the receiving party without use of the disclosing party's Confidential Information; (d) the receiving party rightfully obtains from a third party without restriction on use or disclosure; or (e) is disclosed with the prior written approval of the disclosing party.

**9.3 Use and Disclosure Restrictions.** Each party will not use the other party's Confidential Information except as permitted herein, and will not disclose such Confidential Information to any third party except to employees and consultants as is reasonably required in connection with the exercise of its rights and obligations under this Agreement (and only subject to binding use and disclosure restrictions at least as protective as those set forth herein executed in writing by such employees and consultants). However, each party may disclose Confidential Information of the other party: (a) pursuant to the order or requirement of a court, administrative agency, or other governmental body, provided that the disclosing party gives reasonable notice to the other party to contest such order or requirement; and (b) on a confidential basis to its legal or financial advisors.

## 10. LIMITATION OF LIABILITY

**10.1 Total Liability.** EXCEPT FOR THE INFRINGEMENT INDEMNITY PURSUANT TO SECTION 8.1 ABOVE, TELCONTAR'S TOTAL CUMULATIVE LIABILITY TO LICENSEE, FROM ALL CAUSES OF ACTION AND ALL THEORIES OF LIABILITY (WHETHER BASED ON CONTRACT, TORT, WARRANTY, OR OTHER LEGAL BASIS), WILL BE LIMITED TO AND WILL NOT EXCEED THE FEES PAID TO TELCONTAR BY LICENSEE PURSUANT TO THIS AGREEMENT.

**10.2 Exclusion of Damages.** IN NO EVENT WILL TELCONTAR BE LIABLE TO LICENSEE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOSS OF USE, DATA, BUSINESS OR PROFITS) ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE USE OR PERFORMANCE OF THE PRODUCTS OR SERVICES, WHETHER SUCH LIABILITY ARISES FROM ANY CLAIM BASED UPON CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, AND WHETHER OR NOT TELCONTAR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. THE PARTIES HAVE AGREED THAT THESE LIMITATIONS WILL SURVIVE AND APPLY EVEN IF ANY LIMITED REMEDY SPECIFIED IN THIS AGREEMENT IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

**10.3 Basis of Bargain.** The parties expressly acknowledge and agree that Telcontar has set its prices and entered into this Agreement in reliance upon the limitations of liability specified herein, which allocate the risk between Telcontar and Licensee and form a basis of the bargain between the parties.

## 11. TERMINATION.

**11.1 Term.** This Agreement will begin on the date the Telcontar services to be provided pursuant to the Global Consulting Services Agreement have been performed and completed to the satisfaction of Licensee (the "Effective Date") and will remain in effect for one year and will continue in effect for successive one (1) year renewal periods, until either party gives the other party written notice of termination at least 90 days prior to the anniversary of the then current year. ("Notice Period").

**11.2 Termination for Breach.** Each party will have the right to terminate this Agreement or any Product license granted hereunder if the other party breaches any material term of this Agreement and fails to cure such breach within thirty (30) days after written notice thereof.

**11.3 Effect of Termination.** Upon any termination of this Agreement or of any individual Product license granted hereunder, Licensee will promptly return to Telcontar the applicable Products and all copies and portions thereof, in all forms and types of media, and provide Telcontar with an officer's written certification, certifying to Licensee's compliance with the foregoing.

**11.4 Nonexclusive Remedy.** The exercise by either party of any of its remedies under this Agreement will be without prejudice to its other remedies under this Agreement or otherwise.

11.5 *Survival.* The rights and obligations of the parties contained in Sections 2.2, 2.3, 2.5, 3, 6, 7, 8, 9, 10, 11.3, 11.4 and 12 will survive the termination or expiration of this Agreement or of any individual Product license for any reason.

12. **GENERAL.**

12.1 *Assignment.* Licensee will have no right to assign this Agreement, in whole or in part, without Telcontar's prior written consent, except that Licensee shall have the right to sublicense its licenses and/or assign its rights and obligations under this Agreement to Benefon Oyj, a Finnish corporation. Any attempt to assign this Agreement without any such required consent, will be null and void. This section includes any assignment that would result from the Licensee's acquisition by or merger with a third party.

12.2 *Governing Law and Jurisdiction.* This Agreement will be governed by and construed in accordance with the laws of the State of California excluding that body of laws known as conflicts of law. The United Nations Convention on Contracts for the International Sale of Goods is hereby specifically excluded. Any legal action or proceeding arising under this Agreement will be brought exclusively in the federal or state courts of California and the parties hereby consent to the personal jurisdiction and venue therein.

12.3 *Severability.* If for any reason a court of competent jurisdiction finds any provision of this Agreement invalid or unenforceable, that provision of the Agreement will be enforced to the maximum extent permissible and the other provisions of this Agreement will remain in full force and effect.

12.4 *Waiver.* The failure by either party to enforce any provision of this Agreement will not constitute a waiver of future enforcement of that or any other provision.

12.5 *Notices.* All notices required or permitted under this Agreement will be in writing and delivered by confirmed facsimile transmission, by courier or overnight delivery services, or by certified mail, and in each instance will be deemed given upon receipt. All communications will be sent to the addresses set forth above or to such other address as may be specified by either party to the other in accordance with this Section. Either party may change its address for notices under this Agreement by giving written notice to the other party by the means specified in this Section.

12.6 *Force Majeure.* Neither party will be responsible for any failure to delay in its performance under this Agreement due to causes beyond its reasonable control, including but not limited to, labor disputes, strikes, lockouts, shortages of or inability to obtain labor, energy, raw materials or supplies, war, riot, act of God or governmental action.

12.7 *Relationship of Parties.* The parties to this Agreement are independent contractors and this Agreement will not establish any relationship of partnership, joint venture, employment, franchise, or agency between the parties. Neither party will have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent.

12.8 *Export Control.* Licensee agrees to comply fully with all relevant export laws and regulations of the United States ("*Export Laws*") to ensure that neither the Products, nor any direct product thereof are (a) exported or re-exported directly or indirectly in violation of Export Laws; or (b) are intended to be used for any purposes prohibited by the Export Laws, including but not limited to nuclear, chemical, or biological weapons proliferation.

12.9 *Entire Agreement.* This Agreement, including its schedules and exhibits, constitutes the complete understanding and agreement between the parties regarding its subject matter and supersedes all prior or contemporaneous agreements or understandings, written or oral, relating to the subject matter herein. Any waiver, modifications or amendment of any provisions of this Agreement will be effective only if in writing and signed by duly authorized representatives of both parties.

12.10 *Counterparts.* This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

| BENECAP LIMITED | | TELCONTAR | |
|---|---|---|---|
| By: S.Roberts | D. Thomas | By: *(signature)* | |
| Name: S. ROBERTS | D. FRANCIS | Name: Jeanne Angelo-Pardo | |
| Title: DIRECTOR | DIRECTOR | Title: Chief Financial Officer Telcontar | |
| Date: 16/6/05 | | Date: 6-16-05 | |

## EXHIBIT A

### TELCONTAR PRODUCTS TO BE LICENSED:

Rich Map Engine (compiled with compiler supplied by licensee)

Compilers / filters for Navteq / Tele Atlas map data for Western Europe, North America

## EXHIBIT B

## LICENSE FEES:

### MINIMUM ANNUAL LICENSE FEES

€65,000

### PAYMENT OF MINIMUM ANNUAL LICENSE FEES:

For the first year of this Agreement, Minimum annual license fees MALF shall be payable quarterly in advance (25% with each quarterly payment) with the first payment due on 1st September 2005. In subsequent years MALF will be payable annually at the start of each year.

The MALF paid by Licensee to Telcontar shall be offset against License Fees due.

### LICENSE FEES:

License Fees stated in € (Euros) will be due based upon unit sales volumes of Licensee's Products and Services (as listed in Exhibit E) using Telcontar Products (as listed in Exhibit A) within each license year as follows:

| Number of units | License Fee /unit |
|---|---|
| 0 – 100,000 | €10.00 |
| 100,001 – 150,000 | €9.00 |
| 150,001 - | €8.25 |

Notes:

1. License Fees payable will be reported quarterly using the Royalty Report format shown in Exhibit C. In Year One, License fees will be payable if the cumulative year-to-date MALF figure is exceeded by License Fees due. In subsequent years, License Fees will be payable if the annual MALF figure is exceeded by License Fees due.

### COMPILER / FILTER SUPPORT

For the first year of this Agreement, updates to Telcontar map data compilers and filters will be provided at an annual fee of €5,000. After the first annual period under this Agreement, updates to Telcontar map data compilers and filters will be provided at an annual fee of €10,000.

# EXHIBIT C

**ROYALTY REPORT:**

Licensee: Benecap Limited/Benefon Oyj

Completed by: _____    Telephone: _____

Period From: _____

Period End: _____

☐ No units were licensed/sold during this period. No royalties owed.

☐ Units were licensed/sold during period. See below:

| During this period: Region | Number of Units Sold | Price per Unit | Fees due Telcontar |
|---|---|---|---|
| | (a) | (b) | (a*b) |
| | | | |
| | | | |
| | | | |
| | | | |
| Total | | | |

Royalty amount will be computed and an invoice will be sent based on this information.

Please return this report via fax to 408 294-8464 or mail to:

Accounting
Telcontar
4 North Second Street, Suite 950
San Jose, CA 95113

Telcontar Standard Software License Agreement

## EXHIBIT D

## BASIC SUPPORT

| Basic Support | |
|---|---|
| Support Element | Description |
| Usage issues | Resolvable through direct communication, thought, and conversation response without development engineering effort. |
| Critical issues | |
| Report bugs, including analysis, reproduction, and resolution | May require reproduction of Licensee's problem at Telcontar's San Jose support center; problem must therefore be reproducible in order to be accepted. |
| Receive product upgrades | These are incremental releases and are versions of the form "2.x", "3.x", etc., where the first digit is the same as a version already licensed. In other words, the "dot-value" is a subsequent release of the same primary version under license by the Licensee. |
| Additional support | Available at the current hourly rate. |
| Training | Basic training for DDS is included in the initial license and includes up to three trainees; additional training is available. Note that only trained developers will be allowed to engage Telcontar Technical Support with inquiries. Revenue credit for all training and support is credited to the Technical Support Department. |
| On-site training | Scheduling is subject to availability. |
| Next business day response | Available 9:00 A.M. to 5:00 P.M. Pacific time Monday - Friday. |
| Supporting information required from Licensee | The following information is key to reaching a complete resolution of Licensee reported problems:<br>Version numbers of all Telcontar software products,<br>Operating System platform,<br>Source data vendor identification and data version,<br>Telcontar eXchange Filter used (with version), and<br>Detailed description of the problem, e.g., failing query, include application code so problem can be reproduced at Telcontar.<br>Other, additional information may be required on a case-by-case basis. |
| Scope of support | Support for up to three developers is included as part of the DDS licensing fee. Support for additional developers is available at a cost as specified in the current price list. Support beyond the level of Basic Support is available at the Hourly Support rate. |
| Support upgrade | Upgrading to Extended Support is available at a cost of $15,000 per initial Licensee site, plus $3,000 for each additional site. The upgrade must be Licensee wide. All inquiries must be presented by a Telcontar certified (i.e., trained) person. Licensees may have up to five certified people under the upgraded support contract. Additional personnel may be added at an additional cost. |
| Requires use of "support@telcontar.com" | Provides centralized distribution to the Telcontar technical support team. Licensee employees contacting Telcontar Technical Support must have had Telcontar-provided training. |

Additional Support levels available if desired by Licensee: Pricing for other levels outlined below:

| | |
|---|---|
| Extended Support – concurrent with initial licensing | $12,000 |
| Extended Support – after initial licensing for the first site | $15,000 |

## EXHIBIT E

## LICENSEE'S PRODUCTS AND SERVICES

## FOR WHICH LICENSEE'S CUSTOMER REVENUE PERCENTAGES APPLY

Annual License fees are due on all Licensee's Products and Services, including Benefon Oyj products, that utilize Telcontar Products. The following is a list of Licensee's Products and Services that will utilize Telcontar Products. Licensee is responsible for notifying Telcontar of any changes to this list.

PLEASE COMPLETE