*E-Filed 8/14/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DECARTA, INC.,

    Plaintiff,

v.

GEOSENTRIC OYJ,

    Defendant.

NO. C 08-2620 RS

**ORDER GRANTING PLAINTIFF'S MOTIONS TO DISMISS AND TO STRIKE**

## I. INTRODUCTION

Plaintiff deCarta, Inc. ("Decarta") moves to dismiss, or in the alternative, to strike portions of counterclaims brought by defendant Geosentric OYJ's ("Geosentric") pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. Geosentric opposes the motion. For the reasons set forth below, Decarta's motions to dismiss and to strike will be granted.

## II. BACKGROUND

Geosentirc alleges the following facts. Decarta was formerly known as Telcontar, Inc. ("Telcontar"), and is a California corporation based in San Jose, California. Geosentric is a successor in interest to Benecap, Ltd. ("Benecap"), a New Jersey corporation. On June 16, 2005, Telcontar and Benecap entered into a software licensing agreement ("2005 Agreement").[1] Under the agreement, Decarta promised to provide driving route calculation software for insertion into Geosentric's mobile telephones. In return, Geosentric agreed to pay 65,000 euros as a minimum

---

[1] All future references to and quotations from the 2005 Agreement will refer to Decarta and Geosentric instead of their respective predecessors, Telcontar and Benecap.

1

1  annual licensing fee ("MALF").

2  The limited product warranty contained in the 2005 Agreement provides that: "[Decarta] warrants to [Geosentric] that for a period of one year after the date of delivery to [Geosentric] the Products will function in all material respects in accordance with [Decarta's] published user documentation." Counterclaim, Ex. A., § 7.1. Under the 2005 Agreement:

> As [Geosentric's] sole and exclusive remedy and [Decarta's] entire liability for any breach of the warranty set forth in Section 7.1, [Decarta] will, at its option and expense: (i) promptly correct any Products that fail to meet this limited warranty; (ii) provide [Geosentric] with a reasonable procedure in circumventing the nonconformity; or (iii) if [Decarta] fails to correct the nonconformity or provide a reasonable workaround, refund the license fees paid by [Geosentric] . . . for the non-conforming Product upon [Geosentric's] return of such Product to [Decarta].

*Id*. § 7.2. The 2005 Agreement also contains the following disclaimer:

> [Decarta] does not warrant that the Products will meet [Geosentric's] requirements, that the Products will operate in the combinations that [Geosentric] may select for use, that the operation of the Products will be error free or uninterrupted or that all Product errors will be corrected. [DECARTA] DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, QUIET ENJOYMENT AND WARRANTIES ARISING OUT OF COURSE OF DEALING, USAGE, OR TRADE.

*Id*. § 7.3 (capitalization in original).

The software, according to Geosentric, functioned slowly and was not useful for drivers navigating particular roads in western Europe. Consequently, Geosentric maintains, during negotiations in 2006, Decarta orally promised Geosentric that Decarta would provide routing engines that would compress the required data onto a one gigabyte card that would fit into the mobile telephone, thus alleviating the problem of slow operation. The oral promise was allegedly made in consideration for Geosentric's promise to pay Decarta a MALF of 510,000 euros instead of the original 65,000 euros — a 684% increase in the fee established in the 2005 Agreement. Geosentric further claims that Decarta also promised to draft an amendment to the 2005 Agreement reflecting the new terms, but neither then drafted that amendment, nor supplied a routing engine compressed sufficiently to fit into the card used in the mobile telephones.

According to Decarta, two amendments were made to the 2005 Agreement, but Geosentric did not attach them to its counterclaim. The first amendment, executed on or about August 26, 2005,

2

set the term for the 2005 Agreement as ending on September 1, 2005, and allowed for the extension of that term for successive one year periods. Additionally, the first amendment modified the 2005 Agreement to specify that the Geosentric product and services utilizing Decarta's products was the Geosentric mobile phone with bundled on-board navigation applications. The second amendment, executed on or about August 31, 2006, recognized Decarta's corporate name change from Telcontar, and replaced all references to Telcontar in the 2005 Agreement with Decarta. The second amendment also increased the MALF to 510,000 euros.

According to Decarta, after trying to collect money owed under the 2005 Agreement, it filed a collection action in state court, which Geosentric then removed to federal court where it added the five counterclaims at issue here. Those comprise: (1) rescission of the 2005 Agreement;[2] (2) breach of the 2005 Agreement; (3) breach of express warranty; (4) breach of implied warranty of merchantability; and (5) breach of the 2006 oral contract. Of particular importance to the breach of express warranty counterclaim, in Geosentric's answer to Decarta's complaint, it admits that Decarta requested the return of its products, but acknowledges that it did not do so until November 2007. Answer, ¶¶ 11, 14. Geosentric also continued to sell mobile telephones as late as February 8, 2008, which Decarta argues, reflects that Geosentric failed to return the nonconforming goods within one year of delivery period necessary to trigger Section 7.2 of the 2005 Agreement — the sole remedy provision.

Decarta brings this motion to dismiss on the ground that all of Geosentric's counterclaims fail to state a claim upon which relief can be granted. Decarta argues in particular that all of those counterclaims fail as a matter of law given the clear, unambiguous disclaimer and integration clauses in the 2005 Agreement and its operative amendments.[3]

---

[2] In its opposition, Geosentric withdrew this claim.

[3] The 2005 Agreement's integration clause reads:

This Agreement, including its schedules and exhibits, constitutes the complete understanding and agreement between the parties regarding its subject matter and supercedes all prior or contemporaneous agreements or understandings, written or oral, relating to the subject matter herein. Any waiver, modifications or amendment of any provisions of this Agreement will be effective only if in writing and signed by duly authorized representatives of both parties.

Counterclaim, Ex. A, § 12.9.

3

### III.  LEGAL STANDARD

A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two reasons:  (1) Lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Clegg*, 18 F.3d at 754.  The court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Id.* at 754-55.  A court's review is limited to the face of the complaint, documents the complaint references, and matters of which the court may take judicial notice.  *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).

Motions to dismiss generally are viewed with disfavor and are to be granted rarely.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Leave to amend must be granted unless it is clear that amendments cannot cure the complaint's deficiencies.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  Nevertheless, when amendment would be futile dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988); *Beezley v. Fremont Indem. Co.*, 804 F.2d 530, 531 (9th Cir. 1986) (*per curiam*).

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation.  *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992).  Allegations "supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant."  *Id.*  Moreover, allegations that contribute to a full understanding of the complaint as a whole need not be stricken.

4

*Id.*

## IV.  DISCUSSION

### A.   The Two Amendments and Geosentric's Answer

At oral argument, Geosentric did not question the authenticity of the two amendments to the 2005 Agreement that Decarta filed as exhibits.  While generally a court cannot consider material outside of the complaint when deciding a motion to dismiss under Rule 12(b)(6), a court may consider exhibits submitted with the complaint and those "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ."  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (overruled on other grounds).  Thus, the two amendments may be considered for the purposes of this motion to dismiss.

Geosentric's answer may also be taken into account because a court "may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned."  *Springate v. Weighmasters Murphy, Inc. Money Purchase Pension Plan*, 217 F. Supp. 2d 1007, 1013 (C.D. Cal. 2002) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Doing so does not transform the motion to dismiss into one for summary judgment.  *Branch*, 14 F.3d at 454.

### B.   Breach of Contract and Breach of Express Warranty

Decarta avers that Geosentric's breach of contract and breach of express warranty counterclaims should be dismissed because: (1) the limited product warranty in the 2005 Agreement prohibits such a claim; and (2) Geosentric failed to exercise any rights under Section 7.2 of the 2005 Agreement pertaining to the sole remedy for nonconformity; namely, the return of the nonconforming goods within one year of delivery, as required for a refund of its license fees.

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1391 n.6 (2004).  Under the first prong, a plaintiff must plead the existence of a contract and the terms which establish the obligation in issue.  *FPI Dev., Inc. v. Nakashima*, 231 Cal.App.3d 367, 383 (1991).  For example, in *Parrish v. NFL Players Ass'n*, 534 F. Supp. 2d 1081, 1096 (N.D. Cal. 2007), plaintiffs failed to allege in their complaint what provision of

5

the relevant contract defendants breached. Plaintiffs pled that each player who signed the contract was entitled to royalty payments, but failed to identify the terms in the contract that would entitle them to such payments. *Id*. As a result, the court dismissed the breach of contract claim with leave to amend. *Id*. at 1097.

An express warranty is a contractual term concerning some aspect of the sale, such as the quality of the warranted item. *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal.App.4th 1162, 1168 (2003). In California, a plaintiff states a prima facie case for breach of express warranty by alleging: (1) the exact terms of the warranty; (2) reasonable reliance; and (3) a breach of warranty which proximately causes the plaintiff's injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142 (1986).

Neither of Geosentric's first two counterclaims meet the above requisite elements. In the 2005 Agreement, Decarta warranted the software for one year after delivery to "function in all material respects in accordance with [Geosentric's] published user documentation." Counterclaim, Ex. A, § 7.1. Geosentric alleges that "DeCarta materially breached the Original Agreement by failing to provide route calculation software that functioned in accordance with [Decarta's] published user documentation, in that the route calculation software functioned too slowly to be of use to drivers while navigating on roads in certain regions of Western Europe." Counterclaim, ¶ 9. While Geosentric thereby identifies the specific contract at issue in the form of the 2005 Agreement and the particular contract provision, Section 7.1, as having been breached, Geosentric fails to identify any facts reflecting satisfaction of the one year limitation for access to a remedy identified in that same clause. While the claim is therefore deficient as it now stands, Geosentric will be given leave to amend to identify, if it can do so in good faith, the basis on which it claims to have satisfied its end of the bargain.

Additionally, as expressed in the 2005 Agreement, both parties agreed to a limited product warranty good for only one year after the date of delivery and warranted only to function in accordance with Decarta's published user documentation. Counterclaim, Ex. A, § 7.1. By the express terms of the 2005 Agreement, all other warranties, express and implied, were waived. *Id*. § 7.3. Geosentric claims that it was unable to distribute and sell mobile telephones containing the driving route calculation software that Decarta warranted. Yet under the unambiguous contract

6

terms, Decarta had no obligation to guarantee software that functioned in connection with Geosentric's mobile telephones. In fact, Geosentric's counterclaim does not allege any flaw in the software, only flaws related to the combination of the software with Geosentric's mobile telephone, which was expressly disclaimed in Section 7.3 of the 2005 Agreement.

Even assuming a breach of the limited warranty, the sole and exclusive remedy, at Decarta's option and expense, were to: (1) correct the problem promptly; (2) provide Geosentric with a procedure to circumvent the nonconformity; and (3) refund the license fees paid after the return of those products to Decarta. *Id*. § 7.2. An aggrieved party usually must provide the other party a reasonable opportunity to carry out the exclusive or limited remedy before successfully arguing failure of essential purpose. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2003). In *Nat'l Rural*, the court held that plaintiff's breach of express warranty claim failed because the agreement between plaintiff and defendant set forth a remedy; namely, a partial refund. 319 F. Supp. 2d at 1055. Yet, plaintiff never gave defendant an opportunity to effect plaintiff's remedies under their agreement. *Id*. Plaintiff neither sent a notice to cure, terminated the agreement, nor requested a refund. *Id*. As a result, the court concluded that plaintiff failed to raise an issue of material fact and dismissed the claim. *Id*.

Similarly, if Geosentric had returned the software within a year of its delivery under the terms of the contract, it would have been entitled to have the software corrected or to receive a reasonable workaround of the problem. The right remained with Decarta to determine which of these remedies it would provide, or alternatively, to refund the license fees after Geosentric returned the software. Geosentric, however, admits that in 2006 it was aware the route calculation software functioned too slowly as used on its mobile telephones yet failed to return the software until November 2007 when Decarta demanded the return for failure to pay the licensing fees. Counterclaim, ¶ 9; Answer, ¶¶ 11, 14. Indeed, as late as February 8, 2008, substantially more than a year after Geosentric received the software and the period for return had lapsed, Geosentric was still selling mobile telephones containing Decarta's software. Answer, ¶ 14. Just as the breach of contract claim fails for failure to plead acts Geosentric undertook within the one year framework of the 2005 Agreement, Geosentric must advance such averments for its breach of express warranty counterclaim. Otherwise, based on Geosentric's answer, it appears it did not return the software

7

until well after the limited warranty expired. The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Accordingly, the breach of contract and breach of express warranty counterclaims are dismissed with leave to amend.

C.   <u>Breach of Implied Warranty of Merchantability</u>

Decarta maintains that Geosentric's breach of the implied warranty of merchantability counterclaim should be dismissed owing to the 2005 Agreement's clear disclaimer of warranty language. Geosentric argues that changed circumstances caused the warranty disclaimer to fail of its essential purpose.

An implied warranty of merchantability may be excluded in a written document in which the disclaimer is conspicuous and mentions merchantability. Cal. Com. Code § 2316(2). "[A]ll implied warranties are excluded by expressions like 'as is,' . . . or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id*. § 2316(3)(a). In California, "conspicuous" refers to a term "written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." *Id*. § 1201(b)(10). Conspicuous terms include "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size," and "language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." *Id*. Whether a provision is conspicuous is a question for the court. *Id*. In determining whether a provision is conspicuous, the court must "review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 860 (N.D. Cal. 2000).

Here, the disclaimer in the 2005 Agreement that specifically disclaims the implied warranty of merchantability is printed in all capital letters, with the title "*Disclaimer*" in italicized type. It is found on the third page of the five page agreement. Only three other sections in the agreement contain capital letters, and therefore, the disclaimer in Section 7.3 visually stands out. Moreover, nothing in the counterclaims suggests that Geosentric — a business customer rather than an

8

individual purchaser — is so unsophisticated that it would have failed to notice this disclaimer or appreciated its significance. *See Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *8 (N.D. Cal. Feb. 27, 2008). As a matter of law, therefore, the disclaimer in Section 7.3 of the 2005 Agreement meets the requirement that it must be conspicuous.

Geosentric argues in support of its counterclaim that California Commercial Code § 2719(2) provides "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, [the] remedy may be had as provided in this code." That "failure of essential purpose" argument, however, is entirely conclusory here, and as such, cannot repair the patent deficiency of the counterclaim.

On the face of the counterclaim, Geosentric was not deprived of its remedy under the 2005 Agreement so as to trigger the protections of Section 2719(2), which only "becomes operative when a party is deprived of its contractual remedy . . . ." *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.*, 617 F.2d 936, 941 (2d Cir. 1980) (quotation omitted). Geosentric's contractual remedy was available to it throughout the warranty period. All Geosentric had to do was return the software within a year of its delivery to require Decarta to correct or to receive a reasonable workaround of the problem. Yet, as Geosentric acknowledges in its counterclaims and answer, the software remained unreturned until November 2007 when Decarta demanded the return for failure to pay the licensing fees. As late as February 8, 2008, Geosentric was still selling mobile telephones containing Decarta's software. In the face of an enforceable contract that contains a valid and conspicuous disclaimer of all implied warranties of merchantability between two sophisticated parties, dismissal of this claim is appropriate. Accordingly, the claim is dismissed with prejudice.

D.      Breach of Oral Contract

Decarta argues that Geosentric's breach of oral contract counterclaim should be dismissed because Section 12.9 of the 2005 Agreement, the integration clause, prohibits oral amendments or modifications. Geosentric claims that around September 2006, the parties orally agreed that "by the end of 2006, DeCarta would supply [Geosentric] for inclusion in mobile phones, routing engines that would fit road maps of the whole of Western Europe on a 1 GB SD card, in exchange for which [Geosentric] would agree to an increase in the Minimum Annual Licensing Fee (MALF) from 65,000 Euros in 2005, under the [2005 Agreement], to 510,000 Euros in 2006 . . . ." Counterclaim, ¶

9

10. Geosentric further claims that the parties "agreed to draft an amendment to the [2005 Agreement] that would contain the terms set forth in paragraph 10, above." *Id*., ¶ 11. The 2006 amendment contains the increase in MALF that Geosentric claims is at the heart of its counterclaim.

Despite what the 2005 Agreement and the 2006 amendment might contain, at oral argument Geosentric identified them as being two separate contracts, the later a free-standing oral undertaking. Geosentric suggested in the alternative that reformation might be the appropriate contract theory under which to proceed. Geosentric is granted leave to amend its breach of oral contract claim to plead facts, if it can do so in good faith, sufficient to show that the proposed oral contract was, in fact, a separate agreement from the 2005 Agreement and its amendments, or, in the alternative, that the 2005 Agreement is subject to reformation. Thus, the motion to dismiss the breach of oral contract counterclaim is granted with leave to amend.

E.   <u>Paragraph 31 and Prayer for Relief 1</u>

Decarta moves to strike paragraph 31 and the first prayer for relief as immaterial and impertinent because the 2005 Agreement limits Decarta's liability from all claims arising under that agreement to the license fees paid to plaintiff, which would amount to approximately 76,500 euros. Counterclaim, Ex. A, §§ 10.1, 10.2. Paragraph 31 of Geosentric's counterclaim reads: "DeCarta's material breach of the Oral Agreement proximately causes substantial damage to Geosentric and its predecessors in interest in an amount exceeding $1 million." The first prayer for relief provides: "For compensatory damages in excess of $1,000,000." *Id*. at 5. Because Paragraph 31 and the first prayer fo relief accompany defendant's alleged breach of oral contract counterclaim dismissed with leave to amend, as indicated above, the motion to strike is similarly granted with leave to amend. If Geosentric chooses to replead its oral contract counterclaim it may additionally replead its damages and prayer for relief. If the oral contract counterclaim is not replead, Geosentric is limited to the remedy in Sections 10.1 and 10.2 of the 2005 Agreement.

## V. CONCLUSION

Accordingly, Decarta's motions to dismiss and to strike are granted as follows:

(1) The breach of contract, express warranty, and oral contract counterclaims are dismissed with leave to amend.

(2) The breach of implied warranty of merchantability counterclaim is dismissed with prejudice..

(3) The motion to strike paragraph 31 and the first prayer for relief in Geosentric's counterclaim is granted with leave to amend. Geosentric may replead paragraph 31 and the first prayer for relief if it repleads its oral contract counterclaim.

IT IS SO ORDERED.

Dated: August 14, 2008

RICHARD SEEBORG
United States Magistrate Judge